MEMO ENDORSED

# Green & Willstatter
ATTORNEYS AT LAW
200 MAMARONECK AVENUE
SUITE 605
WHITE PLAINS, NEW YORK 10601

THEODORE S. GREEN
RICHARD D. WILLSTATTER

(914) 948-5656
FAX (914) 948-8730

E-MAIL: THEOSGREEN@MSN.COM

March 31, 2020

Hon. Kenneth M. Karas
United States District Court
300 Quarropas Street
White Plains, New York 10601

Re: *United States v. Matthew DeGroat*
19-cr-609 (KMK)
14-cr-530 (KMK)
16-cr-192 (KMK)

Dear Judge Karas:

This letter is an application to release Matthew DeGroat on recognizance or bond or, alternatively, for a detention hearing to be held as soon as practicable. Mr. DeGroat is detained on a pending indictment (19-cr-609) as well as in connection with a violation of supervised release proceeding with respect to two earlier cases (14-cr-530 and 16-cr-192) for which he had received concurrent sentences. Mr. DeGroat is detained at the Westchester County Jail in Valhalla, New York ("WCJ"). No prior detention hearing has been held in this case. At the last conference, the Court set a motion schedule on the pending indictment, with defense motions due April 24, 2020. The indictment alleges three counts of distribution and possession with intent to distribute controlled substances in violation of 21 U.S.C. §841(b)(1)(c).

The government opposes this application and seeks Mr. DeGroat's continued detention. We propose that Mr. DeGroat be released to home detention enforced by electronic monitoring upon a bond secured by two financially responsible persons. If released, we expect that Mr. DeGroat would reside at the home of a close family friend in Matamoras, Pennsylvania, situated on the border with New York across from Port Jervis. Mr. DeGroat's friend is employed as a personal care assistant and her mother (who owns the house where they live) is employed as a nurse. Both have known Mr. DeGroat for years. They are amenable to having Mr. DeGroat reside in the household under home detention conditions. Moreover, both are willing to serve as cosigners of a bond so long as it is an amount that reasonably takes into account their income and, accordingly, we request that the bond amount be no more than $50,000.

1

Annexed hereto as Exhibit A is a bail application filed March 23, 2020, by the Federal Defenders of New York in *United States v. Chandler*, 19-cr-867 (PAC) (SDNY) (ECF Doc. No. 16) (hereinafter "*Chandler*") and which includes a well-documented presentation on the COVID-19 outbreak and its impact on detainees in correctional facilities. Included as Exhibit A to the *Chandler* application is an affidavit from physician Jonathan Giftos (hereinafter "Giftos") which discusses both the health risks to the general population and the particular increased risks to persons in correctional settings.

**Mr. DeGroat should be granted temporary release because his presence at WCJ heightens the risk of infection to himself, other inmates at WCJ, WCJ staff, and the community.**

New York state and, in particular, the New York metropolitan area including Westchester County, is facing a serious and urgent public health crisis. On March 11, 2020, the World Health Organization officially classified COVID-19, the respiratory illness caused by a novel strain of coronavirus, as a global pandemic. On January 21, 2020, Washington State announced the first confirmed case in the United States. Only two months later, COVID-19 has infected over 41,701 people across the United States, leading to at least 537 deaths. On March 19, 2020, the White House announced that the COVID-19 crisis could last until July and that gatherings over 10 people should be avoided. *Chandler* at 2-3.

Infections are increasing at an exponential rate. The first case of coronavirus in New York State was announced on March 1, 2020. Less than two weeks later, New York State reported 325 positive cases. As of March 29, 2020, the state had amassed 59,513 confirmed cases of the virus, with 965 deaths. In a five-day period between March 15 and March 20, New York State experienced a ten-fold increase in new confirmed cases of COVID-19. As of March 25, 2020 in New York City, there are 17,857 positive cases and 199 deaths resulting from the virus (an increase of more than 3,000 cases and 60 deaths in just 33 hours). Most cases are in men in their 30s and 40s. Id. New York City is the epicenter of the US pandemic. *Chandler* at 2-3.

In response to this public health crisis, Gov. Andrew Cuomo declared a State of Emergency in New York State on March 7, 2020. Mayor Bill de Blasio declared a State of Emergency in New York City on March 12, 2020, banning gatherings of more than 500 people. On March 20, 2020, Governor Cuomo directed all non-essential workers to work from home, requiring individuals to maintain six feet of distance between each other. The same day, the Federal Emergency Management Agency (FEMA) declared New York "a major disaster." *Chandler* at 2-3.

Last week, it was reported that three staff members of the Westchester County Jail (including at least two correction officers) had tested positive for coronavirus, and some housing units had been put under quarantine pending further testing. (Mark Lungariello, *Coronavirus: Westchester County Jail up to 3 confirmed cases, masks distributed*, Westchester Journal News (Mar. 23, 2020), at https://www.lohud.com/story/news/coronavirus/2020/03/23/coronavirus-westchester-county-jail-covid-19/2897283001/).

2

On March 13, 2020, WCJ announced that all civilian visits to the jail are suspended. In separate video conferences with Mr. DeGroat and another client, I was informed that inmates are not being given access to the WCJ law library, where inmates go not only to conduct legal research but to examine electronically stored discovery from their cases.

According to the Centers for Disease Control and Prevention (CDC), nearly 40% of patients hospitalized from coronavirus were 20 to 54 years old. In New York, 18- to 49-year-olds comprise more than half of all cases in the state. Mr. DeGroat is 30 years old. In New York City, 57% of patients are male. *Chandler* at 3.

**Conditions of pretrial confinement create the ideal environment for the transmission of coronavirus.**

"Prisons are petri dishes for contagious respiratory illnesses." *Letter to the Editor: A prison doctor's stark warning on coronavirus, jails and prisons*. Los Angeles Times (Mar. 20, 2020), quoted in *Chandler* at 3. In a state county jail, such as WCJ, the population is transient and funds to care for inmates are limited. Public health experts agree that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings." *Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States*. (Mar. 2, 2020), quoted in *Chandler* at 3-4; *see also* Jan Ransom and Alan Feuer. *'We're left for dead': Fears of virus catastrophe at Rikers Jail*. New York Times (Mar. 30, 2020).

Internationally, prisons have spawned rapid spread of COVID-19. In China, officials confirmed 500 cases in prisons. Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country. *Chandler* at 4. Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency." Jennifer Hansler and Kylie Atwood. *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*. CNN (Mar. 10, 2020), quoted in *Chandler* at 4.

On March 20, 2020, the New York City Department of Correction announced that one inmate and seven staff members in the city jails had been diagnosed with coronavirus. One day later, on March 21, 2020, it became clear that no fewer than 38 people tested positive. At least 58 additional people are being held in contagious disease and quarantine units in the city's jail system .But the cases are not abating. The chairwoman of the New York City Board of Correction urged, "The best path forward to protecting the community of people housed and working in the jails is to rapidly decrease the number of people housed and working in them." *38 positive for coronavirus in NYC jails, including Rikers*. ABC News (mar. 21, 2020), quoted in *Chandler* at 4. The New York City Bar Association has called on "all actors in the criminal justice system" to "swiftly move to reduce the density at all New York City area jails and prisons to prevent or slow the spread of the virus." *Chandler* at 4.

3

Suspending civilian visits at WCJ is insufficient to stop the spread of illness. As with any such facility, "there is no way to stop the daily flow of guards, teachers, food service and healthcare workers. Someone is certain to bring the virus in and take it back out while they are asymptomatic." Los Angeles Times, *supra*, quoted in *Chandler* at 5.

To prevent new infections, the CDC strongly recommends (1) thorough and frequent handwashing, (2) cleaning surfaces with Environmental Protection Agency approved disinfectants, (3) keeping at least six feet of space between people, and (4) social distancing. Giftos aff.

Maintaining six feet of distance from other inmates is all but impossible in a correctional facility. WCJ's solution of curtailing family visits creates yet another public health hurdle. Before the current complete isolation from the outside world, the inmates only contact with their families were the common telephones and increased phone use creates more opportunities to spread the infection.

With each additional new arrest comes increased risk of spreading the virus in WCJ. Individuals who are newly arrested and potentially exposed to coronavirus, if they are not symptomatic, will be brought into the facility. There, they are held with the existing population, potentially transmitting COVID-19 to a populace held in close quarters. These conditions are ripe for the spread of infection: An individual who tested positive for coronavirus at the MDC on March 21, 2020 was first incarcerated only a few short days before becoming symptomatic. By the time he was segregated, he had been in contact with more than 100 other people. *Chandler* at 6.

Notwithstanding the report of staff members testing positive at WCJ, the County has published precious little on what the jail is doing about this crisis. Other than the suspension of civilian visits and a media report that some units are under quarantine, we are unaware of any published reports that WCJ is prepared to address the outbreak or whether it has general screening protocols for inmates or staff or whether the facility even has the ability to conduct its own testing, much less extensive testing. For example, if an inmate is symptomatic and the inmate is "isolated" in his cell, this could expose other inmates to risk. And, if moved to another area for segregation, this movement will be by the very guards who will continue to be in contact with the other prisoners still in the facility.

When an individual is in custody, the Bail Reform Act "permit[s] the temporary release of the person, in the custody of a United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i)(4). And there is no more "compelling reason" than the individual's physical health and the health and safety of the community.

Annexed hereto as Exhibit B is a compilation of cases (provided by Federal Defenders) in the Southern and Eastern Districts of New York where Courts have granted bail in light of the COVID-19 crisis.

4

Accordingly, we respectfully submit that bail should be granted on the conditions proposed at least until the COVID-19 crisis has passed, and any review of his release status following abatement of the crisis should take into account Mr. DeGroat's compliance while on release.

Respectfully submitted,

/s/ *Theodore S. Green*
Theodore S. Green
Green & Willstatter
200 Mamaroneck Avenue – Suite 605
White Plains, New York 10601
(914) 948-5656

cc: All counsel (by ECF)

The Government is to respond to this application by 4/3/20.

So Ordered.

[signature]

3/31/20

5